**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ESTANISLAO ENTERPRISES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-1809 |
| | ) | Judge Nora Barry Fischer |
| FEDEX GROUND CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

I.      INTRODUCTION

This is a commercial dispute between Plaintiff Estanislao Enterprises, Inc., ("EEI"), and Defendant FedEx Ground Corporation, ("FedEx Ground"), arising out of an Independent Service Provider Agreement, ("ISP Agreement"), pursuant to which EEI was the exclusive provider of package pickup and delivery services for FedEx Ground in an area of Western Florida including Tampa, St. Petersburg, and Clearwater. (Docket No. 11). Presently before the Court are a motion filed by FedEx Ground seeking to compel arbitration and stay this action pending arbitration, (Docket No. 14), and EEI's opposition thereto, (Docket Nos. 19-20). The motion has been exhaustively briefed and is now ripe for disposition. (Docket Nos. 14-15; 19-21; 30; 34; 36; 38; 40). After careful consideration of the parties' positions, and for the following reasons, FedEx's Motion [14] is granted and pursuant to the parties' ISP Agreement, this matter will be referred to arbitration and the case will be stayed.

II.      BACKGROUND

FedEx Ground is a Moon Township, Pennsylvania-based company which provides package pick-up, transportation and delivery services for businesses and individuals throughout the United States and Canada. (Docket No. 11 at ¶¶ 17-19). FedEx Ground operates an

independent service provider model pursuant to which it has a hub and station network of over 700 distribution facilities and outsources much of its package pick-up, transportation and delivery services to approximately 7,000 third-party independent corporate entities.  (*Id*. at ¶¶ 20-28). These entities contract with FedEx Ground to provide such services on one or multiple routes within a regional service area under agreements with terms of approximately 12 or 18 months.  (*Id*. at ¶ 154).

EEI is an Odessa, Florida-based company owned and operated by its President John Fred. (Docket No. 11 at ¶¶ 11, 197).  After retiring from a career as a Nassau County police officer, Fred conducted extensive research to find an entrepreneurial venture that he could invest in and operate as a small business.  (*Id*. at ¶¶ 197-99).  Fred reviewed marketing materials and met with FedEx regional personnel and determined that he would pursue the business opportunity offered by FedEx to join as an independent service provider.  (*Id*. at ¶¶ 199-203).  EEI was ultimately approved as an independent service provider for FedEx Ground and the parties entered into an ISP Agreement with a start-up date of March 10, 2015.  (*Id*. at ¶ 208).  Fred has allegedly invested around one million dollars into EEI from his personal funds, earnings and loans.  (*Id*. at ¶¶ 209, 408).  EEI and FedEx Ground had a long-standing contractual relationship for more than 8 years as they entered into successive ISP Agreements and/or extensions of the existing agreements until the latest term expired on June 9, 2023.  (*Id*. at ¶¶ 208, 340).

EEI now broadly asserts that FedEx Ground is engaged in abusive and illegal business practices toward itself and other so-called "independent contractors" operating under ISP Agreements.  (*See generally* Docket No. 11 at ¶¶ 36-195).  Among other things, EEI claims that, despite the language of the ISP Agreements to the contrary, FedEx Ground maintains complete control of the operations of its contractors; interferes with the contractors' relationships with their

own employees; uses false metrics to evaluate the performance of its contractors; fraudulently shifts business risks to the contractors by making changes to its internal policies, procedures and pricing without notice; and, engages in dishonest practices regarding re-assignments of routes among contractors as well as the renewal and renegotiation of ISP Agreements with contractors. (*Id*.).  EEI further asserts that FedEx Ground sells its ISP program to prospective contractors by promising that they will have an opportunity to grow and capitalize their investments by selling their businesses, ISP Agreements and designated routes to third-party entities. (*Id*.).

Specifically, EEI alleges that FedEx Ground thwarted an opportunity for EEI to sell its business to another Florida-based contractor, Luna Delivery, Inc. ("Luna") for $2.1 million in February of 2021.  (Docket No. 11 at ¶ 236).  Although FedEx Ground managers initially approved the sale, they later reneged on the deal, approved a sale EEI's sale of only half of the business to Luna, and that a sale of the remaining half would be contingent on Luna demonstrating that it was capable of servicing the routes owned by EEI.  (*Id*. at ¶¶ 236-243).  EEI avers that it was forced to renew its ISP Agreement with FedEx Ground because the deal with Luna was not finalized as the term of the prior ISP Agreement was expiring and it had the expectation that the remainder of the business would be sold to Luna at a later time.  (*Id*. at ¶¶ 244-49).  EEI contends that it entered into a subsequent agreement to sell the remaining half of the business to Luna for $860,000.  (*Id*. at ¶¶ 321).  However, FedEx Ground once again engaged in a series of actions delaying and hindering the sale, refused to negotiate a further renewal of EEI's ISP Agreement while the sale was finalized, allowed the ISP Agreement to expire, and then provided EEI's territory to Luna for free.  (*Id*. at ¶¶ 320-341).

In its 422 paragraph Amended Complaint, EEI brings the following 8 claims against FedEx Ground: breach of contract; breach of covenant of good faith and fair dealing; promissory estoppel;

tortious interference with economic advantage; negligent misrepresentation; fraud, concealment and false promises; violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq.; and civil conspiracy.  (Docket No. 11).  EEI later supplemented its RICO claims by filing a RICO case statement, as the Court directed.  (Docket No. 23).  EEI alleges in its RICO Case Statement that FedEx Ground conspired with other entities including Sunbelt Business Brokers of South Florida, Gatesman Agency, other unnamed third-party marketing companies and recruiters and its parent company, FedEx Corporation.  (*Id*. at 6-7).  However, neither these entities nor Luna have been added as parties to this lawsuit.  (Docket No. 11).

FedEx Ground has moved to compel arbitration pursuant to the arbitration clause contained in the parties' ISP Agreement which was effective from November 27, 2021 through the end of the relationship on June 9, 2023.  (Docket No. 14).  EEI does not contest that its principal, Fred, executed the ISP Agreement, as is denoted in same:

> This document has been signed electronically on 11/25/2021 at 09:34:53 AM by 7820072 - JOHN FRED for ESTANISLAO ENTERPRISES INC and by 1375903 - Christopher Reeb for FXG, and the electronic signatures shall for all purposes be considered equal to manual signatures, as set forth in the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act, and applicable state statutes.

(Docket No. 14-1 at 5).  By signing the agreement, Fred also represented that:

> THE PARTIES HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS AGREEMENT AND HAVE HAD SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH FINANCIAL, TAX AND LEGAL ADVISORS PRIOR TO EXECUTING THE DOCUMENT. EACH SIGNATORY BELOW WARRANTS THAT HE OR SHE HAS AUTHORITY TO EXECUTE THIS AGREEMENT ON BEHALF OF AND TO LEGALLY BIND THE PARTY FOR WHOM EACH HAS SIGNED.

(*Id*.).

The relevant terms of the ISP Agreement include the following dispute resolution, arbitration and governing law clauses:

> 16. DISPUTE RESOLUTION
> 16.1 Dispute Resolution Procedure. The Parties agree that "Dispute" includes any dispute, claim or controversy between the Parties arising out of or relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement, either directly or indirectly, including without limitation with respect to the interpretation of any provision of this Agreement, the performance by either Party, the treatment by one Party of the other, and/or the termination of this Agreement, whether in contract or in tort, or for damages or equitable remedies of whatever kind, and whether arising pursuant to a statute, regulation, at common law, in equity or otherwise. The Parties agree that the joinder or intervention obligation set forth in Schedule L of this Agreement is not subject to Sections 16.1, 16.2, 16.3 or 16.5 of this Dispute Resolution provision.

(Docket No. 14-1 at § 16.1).

> 16.3 Arbitration. In their mutual interest to resolve Disputes promptly and efficiently, the Parties have elected to abide by the following mandatory arbitration provisions, the class waiver provision, and the Arbitration Procedures in Section 16.5. The Parties agree that any Dispute, including without limitation the scope or applicability of this agreement to arbitrate, shall be determined by final binding arbitration. The Parties agree that the arbitrator shall have exclusive authority to resolve any Disputes including, without limitation, the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate. No suit at law or in equity based on any Dispute or controversy shall be instituted by either Party hereto, other than a suit to confirm, enforce, vacate, modify or correct the award of the arbitrator as provided by Applicable Law. This clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO A COURT TRIAL AND TRIAL BY JURY IS OF VALUE. BY SIGNING THIS AGREEMENT, THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE SUCH RIGHT FOR ANY DISPUTE AND AGREE THAT THE TERMS OF THIS AGREEMENT TO ARBITRATE APPLY TO ANY DISPUTE.

(Docket No. 14-1 at § 16.3).

> 18.10 Governing Law. This Agreement and all matters arising out of, related to, or occurring in connection with this Agreement, or other disputes between the Parties to this Agreement, shall be governed by, construed, interpreted, and enforced in accordance with the substantive and procedural laws of the Commonwealth of Pennsylvania, including its statutes of limitations, without giving effect to any choice of law or conflict of laws rules or provisions, provided that the arbitration provisions in Section 16 of this Agreement shall be governed by the Federal Arbitration Act ("FAA"). In the event that the FAA is inapplicable for any reason, the Parties agree that the Pennsylvania Revised Uniform Arbitration Act shall apply.

(Docket No. 14-1 at § 18.10).

EEI counters that arbitration should not be compelled because the FAA does not apply as it qualifies for the transportation worker exemption under 9 U.S.C. § 1 and the delegation and arbitration clauses are allegedly unenforceable for various reasons. (Docket Nos. 21; 36; 38). On May 23, 2024, EEI commenced a parallel arbitration proceeding raising the same claims against FedEx Ground with the American Arbitration Association. (Docket Nos. 38; 40). EEI states that it did so in order to preserve its rights under the ISP Agreement in the event that this Court does not rule in its favor. (Docket No. 40).

As noted, the parties have submitted extensive briefing on the issues and the Court has received and reviewed all of the following: FedEx Ground's motion and supporting brief, (Docket Nos. 14-15); EEI's response and brief in opposition, (Docket Nos. 19-20); FedEx's reply, (Docket No. 30); EEI's sur-reply, (Docket No. 36); FedEx Ground's supplemental brief, (Docket No. 38); and EEI's response to same, (Docket No. 40). Neither party has requested oral argument and the Court does not believe it is necessary to resolve their disputes. Accordingly, the motion to compel arbitration is fully briefed and ripe for disposition.

III.    LEGAL STANDARD

A motion to compel arbitration is evaluated under either the Rule 12(b)(6) or Rule 56

standard. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). In determining which standard to apply, the United States Court of Appeals for the Third Circuit has held that:

> when it is clear on the face of the complaint that a validly formed and enforceable arbitration agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a Rule 12(b)(6) pleading standard "without discovery's delay." *Guidotti*, 716 F.3d at 776. But if the complaint states a claim or the parties come forward with facts that put the formation of the arbitration agreement in issue, the court may authorize "limited discovery" to resolve that narrow issue for purposes of deciding whether to submit the matter to arbitration. *Id.* After discovery, the court may consider the question anew, using a summary judgment standard under Rule 56. *Id.* If a genuine issue of material fact remains, the court must proceed summarily to trial on "the making of the arbitration agreement." *Id.* (citing 9 U.S.C. § 4). In following these procedures, courts must balance the FAA's competing interests in moving arbitrable claims speedily and efficiently into arbitration and in ensuring that the parties have in fact agreed to arbitrate. *See id.* at 773.

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020). However, "when state law grounds exist that would enforce arbitration even if the FAA does not apply, courts must turn to that threshold question under *Guidotti* before ordering discovery." *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 293–94 (3d Cir. 2021). Hence, if the Court cannot resolve whether the FAA applies under the Rule 12(b)(6) standard, the Court must determine whether arbitration should be enforced under relevant state law before ordering discovery. *Id.* at 296.

"As 'the party resisting arbitration,' [Plaintiff] bear(s) the burden of showing 'that the claims at issue are unsuitable for arbitration.'" *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 556 (3d Cir. 2023), *as amended* (May 4, 2023), *cert. denied*, 144 S. Ct. 566, 217 L. Ed. 2d 301 (2024) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92, 121 S.Ct. 513, 148 L.Ed.2d

373 (2000)).  If the Court determines that any issue in the lawsuit is subject to arbitration, § 3 of the FAA requires the Court to stay, rather than to dismiss the lawsuit, without prejudice.  *See Smith v. Spizzirri*, 144 S.Ct. 1173, 1177-78 (2024).

Relevant here, to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Plausibility exists somewhere between "possible" and "probable."  The former necessitates factual allegations that are "more than merely consistent with a defendant's liability." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  But the latter only demands that the court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1937 (citations omitted).  Detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss, however, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

In general, when a trial court evaluates a Rule 12(b)(6) motion to dismiss, it "may not consider matters extraneous to the pleadings." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  However, courts may consider "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pinkney v. Meadville, Pa.*, No. 21-1051, 2022 WL 1616972, at *2 (3d Cir. 2022) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)).

The United States Court of Appeals for the Third Circuit has instructed the district courts

to utilize a three-step process in evaluating a Rule 12(b)(6) motion to dismiss.  *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022).  Court must first set out the elements of the plaintiff's claim; then, identify and disregard any "formulaic recitation of the elements" or allegations that are "so threadbare or speculative" such that they amount to nothing more than mere conclusory statements; and, finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]"  *Id.* at 327-328 (alteration, internal quotation marks, and citations omitted).  In addition, courts must draw all reasonable inferences in favor of the plaintiff.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-791 (3d Cir. 2016).

IV.    DISCUSSION

FedEx Ground argues that EEI should be compelled to arbitrate its claims pursuant to the FAA or, alternatively, the Pennsylvania Revised Uniform Arbitration Act, as is set forth in § 16.3 of their ISP Agreement.  (Docket Nos. 14; 15; 30; 38).  While EEI concedes that it is a party to the ISP Agreement and has now commenced an arbitration proceeding against FedEx Ground pursuant to that agreement, it contends that arbitration should not be compelled because § 1 of the FAA allegedly exempts employment contracts of transportation workers from arbitration and the delegation and arbitration provisions are purportedly unenforceable.  (Docket Nos. 21; 36; 40).  Having carefully considered the parties' positions, the Court concurs with FedEx Ground that arbitration should be compelled under the FAA.  As such, the Court need not resolve FedEx's alternative theory that arbitration should be compelled under the Pennsylvania Act.  The Court's analysis follows.

It is well established that the FAA promotes a strong federal policy in favor of enforcing commercial arbitration agreements to which parties have agreed.  *See Zirpoli v. Midland Funding,*

*LLC et al.*, 48 F.4th 136, 142 (3d Cir. 2022).  As the Supreme Court recognized earlier this term:

> The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). As a result, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court is "satisfied that the making of the agreement for arbitration ... is not in issue," it must send the dispute to an arbitrator. § 4. "The FAA thereby places arbitration agreements on an equal footing with other contracts." *Rent-A-Center*, 561 U.S., at 67, 130 S.Ct. 2772.

*Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192-93 (2024).

EEI raises a threshold issue of whether the ISP Agreement is exempt under § 1 of the FAA and retains the burden to plead a plausible claim that the FAA does not apply to its claims.  *See Harper*, 12 F.4th at 292-93.  Section 1 provides, in pertinent part, that the FAA does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  Our Court of Appeals has explained that:

> [§ 1] is a "very particular qualification" attributed to pre-existing "alternative employment dispute resolution regimes for many transportation workers." *New Prime, Inc. v. Oliveira*, —— U.S. —— –, 139 S. Ct. 532, 537, 202 L.Ed.2d 536 (2019). Adding to § 1's language, we have applied the exception to cover employees in any transportation industry who "engage[ ] in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437*, 207 F.2d 450, 452 (3d Cir. 1953) (en banc). Since then, the Supreme Court has cautioned courts to "construe the 'engaged in commerce' language in the FAA with reference to the statutory context in which it is found and in a manner consistent with the FAA's purpose." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Applying this framework, the Court has held "that the § 1 exclusion provision [should] be afforded a narrow construction." *Id.*; *see also Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800– 02 (7th Cir. 2020).
>
> Equally important, the "inquiry regarding § 1's residual clause asks a court to look to classes of workers rather than particular workers."

> *Singh v. Uber Techs., Inc.*, 939 F.3d 210, 227 (3d Cir. 2019); *see also Wallace*, 970 F.3d at 800 (Section 1 asks "not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce." (quotation marks and emphasis omitted)). That limitation flows from the ordinary meaning of § 1, which includes the "other class of workers engaged in ... commerce" as a "residual phrase, following, in the same sentence, explicit reference to 'seamen' and 'railroad employees.'" *Circuit City*, 532 U.S. at 114, 121 S.Ct. 1302.

*Harper*, 12 F.4th at 292-93.  Other Courts of Appeals, including the Ninth Circuit, have held that "[t]he text of the transportation worker exemption makes clear […] that the residual clause [of § 1] does not extend to business entities." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1195-96 (9th Cir. 2024); *see also Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596-97 (4th Cir. 2023) (same); *Tillman Transp., LLC v. MI Bus. Inc.*, 95 F.4th 1057, 1061-64 (6th Cir. 2024) (same).  The Ninth Circuit persuasively explains that the transportation worker exemption applies to "actual human workers" and that "[w]hile a natural person such as an independent contractor may be a transportation worker, a nonnatural person such as a business entity that employs or contracts with transportation workers, is not and cannot be a transportation worker." *Fli-Flo Falcon, LLC*, 97 F.4th at 1196.

In this Court's estimation, after accepting all of EEI's allegations as true and resolving all reasonable inferences in its favor, EEI has failed to state a plausible claim that it is a transportation worker subject to the exemption under § 1 of the FAA.  *See Harper*, 12 F.4th at 292-93.  To the contrary, EEI admits that it is a business entity repeatedly throughout its 422-paragraph Amended Complaint and its essential claims all flow from the refusal of FedEx Ground to approve the sale of the business to Luna.  (*See* Docket No. 11).  Simply put, the facts that Fred owns the business and EEI employed individuals or independent contractors to pick up and deliver packages under the ISP Agreement with FedEx are insufficient to state a plausible claim invoking the § 1

11

exemption. *See Harper*, 12 F.4th at 292-93; *see also Fli-Flo Falcon, LLC*, 97 F.4th at 1196. Accordingly, EEI's objection to the application of the FAA is overruled, and the Court will continue to analyze whether to enforce arbitration under the FAA.

The Court next turns to the parties' disputes concerning whether EEI should be compelled to arbitrate its claims against FedEx Ground. (Docket Nos. 14-15; 20-21; 30; 36; 38; 40). EEI asserts that the delegation and arbitration clauses are unenforceable because of all of the following: certain of its claims, i.e., civil conspiracy, fraud, and RICO, are beyond the scope of the delegation and arbitration clauses; FedEx Ground allegedly engaged in "fraud in the inception" invalidating the agreement; it would subvert public policy to enforce the agreement; and, the arbitration policy is procedurally and substantively unconscionable. (Docket Nos. 21; 36; 40). FedEx Ground maintains that EEI has already commenced an arbitration of all of its claims and further conceded in its briefs that its breach of contract, breach of covenant of good faith and fair dealing, promissory estoppel, tortious interference with economic advantage, and negligent misrepresentation claims are within the scope of the delegation clause, making them subject to arbitration. (Docket Nos. 30; 38). FedEx Ground also advocates that the parties expressly agreed that the arbitrator would resolve their disputes as to the arbitrability of the civil conspiracy, fraud, and RICO claims. (Docket Nos. 15; 30; 38). Having carefully considered the parties' positions, the Court agrees with FedEx Ground that arbitration should be compelled here for several reasons.

The Supreme Court recently articulated a number of important legal principles at issue in this case, as follows:

> Given that arbitration agreements are simply contracts, "'[t]he first principle that underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184, 139 S.Ct. 1407, 203 L.Ed.2d 636 (2019) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); some alterations in original).

Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?

As relevant here, parties can form multiple levels of agreements concerning arbitration. At a basic level, parties can agree to send the merits of a dispute to an arbitrator. They can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 139 S.Ct. 524, 202 L.Ed.2d 480 (2019). An agreement to allow an arbitrator to decide whether a dispute is subject to arbitration—i.e., its arbitrability—"is simply an additional, antecedent agreement ..., and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S., at 70, 130 S.Ct. 2772.

From these different kinds of agreements, it follows that parties can also have different kinds of disputes. A contest over "the merits of the dispute" is a first-order disagreement, *First Options*, 514 U.S., at 942, 115 S.Ct. 1920 (emphasis deleted), the resolution of which depends on the applicable law and relevant facts. The parties may also have a second-order dispute—"whether they agreed to arbitrate the merits"—as well as a third-order dispute—"who should have the primary power to decide the second matter." *Ibid.* (emphasis deleted). Under contract principles, these second- and third-order questions are also matters of consent. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id.*, at 943, 115 S.Ct. 1920 (citations omitted).

We ask who has the power to decide arbitrability because "a party who has not agreed to arbitrate will normally have a right to the court's decision about the merits of its dispute." *Id.*, at 942, 115 S.Ct. 1920. Thus, we have explained that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.*, at 944, 115 S.Ct. 1920 (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); some alterations in original).

*Coinbase, Inc.*, 144 S. Ct. at 1192-93.

13

Our Court of Appeals has held that "unless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co., Inc.*, 974 F.3d at 399 (quoting *Rent-A-Center*, 561 U.S. at 72, 130 S.Ct. 2772). Stated differently, if "the parties clearly and unmistakably agreed to arbitrate questions of contract formation in a contract whose formation is not in issue," those questions are for the arbitrator. *Id.* at 402. With that said, the Court of Appeals emphasized that the plaintiff's claims must be specifically directed at the delegation clause and that claims of fraudulent inducement of the entire contract do not suffice to demonstrate clear and unmistakable evidence that the parties did not agree to arbitrate issues of arbitrability. *Id.* at 405-06. The Court of Appeals also found that the Rule 12(b)(6) standard requires the Court to examine the allegations in the pleading to determine if the plaintiff has challenged the delegation clause specifically or fraud in the execution of the entire agreement. *Id.* at 406-07. If the plaintiff's allegations do not meet these standards, the Court must enter an order compelling arbitration and the arbitrator will resolve the parties' arbitrability disputes. *Id.*

After examining EEI's Amended Complaint and the ISP Agreement in light of these standards, it is this Court's opinion that § 16.3 of the ISP Agreement contains a delegation clause which constitutes clear and unmistakable evidence that the parties agreed that the arbitrator would resolve their arbitrability disputes. *MZM Constr. Co., Inc.*, 974 F.3d at 405-07. In addition, accepting all of EEI's allegations as true and resolving all inferences in its favor, it has not pled sufficient facts to set forth a plausible claim challenging the delegation clause specifically nor asserted fraud in the execution of the ISP Agreement which would render the entire agreement (and corresponding delegation clause) void. *Id.*

14

As to the former, Section 16.3 provides, as follows:

> 16.3 Arbitration. In their mutual interest to resolve Disputes promptly and efficiently, the Parties have elected to abide by the following mandatory arbitration provisions, the class waiver provision, and the Arbitration Procedures in Section 16.5. **The Parties agree that any Dispute, including without limitation the scope or applicability of this agreement to arbitrate, shall be determined by final binding arbitration. The Parties agree that the arbitrator shall have exclusive authority to resolve any Disputes including, without limitation, the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate.** No suit at law or in equity based on any Dispute or controversy shall be instituted by either Party hereto, other than a suit to confirm, enforce, vacate, modify or correct the award of the arbitrator as provided by Applicable Law. This clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO A COURT TRIAL AND TRIAL BY JURY IS OF VALUE. BY SIGNING THIS AGREEMENT, THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE SUCH RIGHT FOR ANY DISPUTE AND AGREE THAT THE TERMS OF THIS AGREEMENT TO ARBITRATE APPLY TO ANY DISPUTE.

(Docket No. 14-1 at § 16.3 (emphasis added).  The parties also agreed to a broad definition of "Dispute," i.e.:

> "Dispute" includes any dispute, claim or controversy between the Parties arising out of or relating in any way to this Agreement and/or the relationship between the Parties resulting from this Agreement, either directly or indirectly, including without limitation with respect to the interpretation of any provision of this Agreement, the performance by either Party, the treatment by one Party of the other, and/or the termination of this Agreement, whether in contract or in tort, or for damages or equitable remedies of whatever kind, and whether arising pursuant to a statute, regulation, at common law, in equity or otherwise.

(*Id*. at § 16.1).  Read together, these provisions plainly indicate the parties' agreement that they would delegate the authority to the arbitrator to decide whether EEI's claims against FedEx Ground asserting fraud, civil conspiracy and RICO violations are subject to arbitration or not.  (*Id*.

at §§ 16.1, 16.3).

Despite its arguments to the contrary, EEI's Amended Complaint neither plausibly raises a challenge to the delegation clause specifically nor does it allege fraud in the execution of the ISP Agreement. (*See* Docket No. 11). Indeed, EEI does not reference the delegation clause throughout its 422-paragraph pleading and only references the arbitration clause generally in 3 of those paragraphs. (*See* Docket No. 11 at ¶¶ 8, 180, 194). The Court's review of the pleading clearly indicates that at no point does EEI directly challenge the delegation clause. (Docket No. 11). EEI has therefore failed to meet its burden to plead a plausible claim challenging the delegation clause, as is required under Third Circuit precedent. *MZM Constr. Co., Inc.*, 974 F.3d at 405-407.

In any event, it is also well established that EEI cannot amend its pleading through its briefs like it has attempted to do here. *See Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 F. App'x. 811, 819 n. 4 (3d Cir. 2004) (quoting *Williams v. New Castle County*, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992)) ("'a contention in a brief' 'clearly ... may not' be used to 'substitute for an allegation in a complaint.'"). But, even after considering all of EEI's arguments, the Court is not persuaded that EEI has sufficiently raised a specific challenge to the delegation clause which would permit it to avoid the delegation clause in § 16.3. (*See* Docket Nos. 21; 36; 40). The Court also believes that its challenges to the ISP Agreement, at most, broadly assert that it was fraudulently induced to enter into business with FedEx Ground at the outset of the relationship in 2015, but our Court of Appeals has expressly held that fraudulent inducement claims must be directed specifically to the delegation clause and not the agreement as a whole. *See MZM Constr. Co., Inc.*, 974 F.3d at 405-06. EEI's unconscionability and RICO claims are likewise insufficient to avoid the arbitration and delegation provisions for the reasons expressed by the U.S. District Court for the Northern District of California in the similar action brought against FedEx Ground in that District. *See PYNQ*

*Logistics Serv., Inc. v. FedEx Ground*, Civ. A. No. 3:23-5881-SK, Docket No. 38 (N.D. Ca. May 6, 2024).  The other matters raised by EEI similarly fail to persuade this Court that it should not compel arbitration given all of the facts and circumstances of this case.  (Docket Nos. 21; 36; 40).  Therefore, the Court must direct the parties to arbitrate the issues "without discovery's delay." *Guidotti*, 716 F.3d at 776.

As a final matter, even if the Court did not believe that the delegation clause should be enforced, it appears to the Court that a stay of this case would remain necessary under § 3 of the FAA based on EEI's initiation of the arbitration proceeding and FedEx Ground's request for a stay.  (Docket Nos. 15; 38; 40).  To that end, EEI has never challenged that 5 of its claims are subject to arbitration and has already filed an arbitration action against FedEx Ground covering all of its claims in this lawsuit.  (Docket Nos. 21; 36; 38; 40).  Although Courts have always recognized the inherent authority to stay a case if only some of the claims asserted in the lawsuit were subject to arbitration, *see, e.g., DiValerio v. Best Care Laboratory*, 2022 WL 20679837, at *1 (D. N.J. Mar. 28, 2022), recent pronouncements by the Supreme Court indicate that a stay is required in a case such as this one.

As the Supreme Court recognized:

> Section 3 of the FAA, entitled "Stay of proceedings where issue therein referable to arbitration," provides that, **<u>when any issue in a suit is subject to arbitration</u>**, the court

> "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

*Spizzirri*, 144 S. Ct. at 1177 (quoting 9 U.S.C. § 3) (emphasis added).  Interpreting this language, the Supreme Court resolved a split among the Courts of Appeals and held that "the use of the word 'shall' creates an obligation impervious to judicial discretion." *Id*. at 1177 (quoting *Lexecon Inc.*

*v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)).  The Supreme Court then concluded that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id*. at 1178.

Here, EEI does not meaningfully contest that this lawsuit involves arbitrable disputes between the parties and it has already initiated an arbitration proceeding against FedEx Ground. (Docket Nos. 21; 36; 38; 40).  Since FedEx Ground has requested a stay, this Court must enter an appropriate Order staying this matter pending their completion of the arbitration.  *See Spizzirri*, 144 S.Ct. at 1177.

V.     CONCLUSION

To conclude, the FAA favors the enforcement of arbitration agreements in cases such as this one where the parties plainly assented to the arbitration agreement, and it contains a delegation clause clearly and unmistakably delegating the resolution of disputes as to the arbitrability of claims to the arbitrator.  *See MZM Constr. Co., Inc.*, 974 F.3d at 399, 405-07.  For the reasons stated above, after accepting all of EEI's allegations as true and resolving all inferences in its favor under the Rule 12(b)(6) standard, the Court finds that EEI has failed to meet its burden to state a plausible claim that the matter is unsuitable for arbitration.  *See Guidotti*, 716 F.3d at 776; *see also Singh*, 67 F.4th at 556.   Guided by experienced counsel, EEI has already initiated an arbitration of its claims and to meet the FAA's goals of "moving arbitrable claims speedily and efficiently to arbitration," the Court will also enter an order compelling EEI to arbitrate those claims, "without discovery's delay" and staying this action.  *See Guidotti*, 716 F.3d at 776; *see also Spizzirri*, 144 S.Ct. at 1177.

Accordingly, FedEx Ground's motion to compel arbitration and stay this matter pending

arbitration (Docket No. 14) is granted.  An appropriate Order follows.


                                        *s/Nora Barry Fischer*
                                        Nora Barry Fischer
                                        Senior U.S. District Judge

Dated:  July 5, 2024

cc/ecf:  All counsel of record